HAMILTON F. KEAN et al., Copartners under the Firm Name of KEAN, TAYLOR & COMPANY, Respondents, *v.* NATIONAL SURETY COMPANY, Appellant.

**Insurance — policy insuring against loss through dishonesty of employees and others — insured cannot recover for loss through theft where they have omitted to take precaution explicitly prescribed.**

1. An insurance policy or bond is no different than any other contract, and comes within the same rules of construction. The purpose and attempt of the courts is to give to the language used by the parties its usual and ordinary meaning in the light of all the circumstances and conditions, having in mind, as did the parties, the nature of the transaction.

2. An action cannot be successfully maintained upon a banker's blanket bond, insuring the plaintiffs, amongst other things, against loss through robbery of government bonds in transit within twenty miles of plaintiffs' office but explicitly providing that the bond did not cover a loss, where the par value of the bonds was over $250,000, unless they were in the custody of a partner or regular employee of the insured continuously accompanied by two guards over twenty-one years of age, where, when the robbery for which the claim is made occurred, bonds of more than the par value mentioned were being carried through the street by an employee accompanied only by a boy eighteen years of age. It is entirely immaterial whether the holdup was by an employee of the plaintiffs or by strangers.

*Kean* v. *National Surety Co.*, 213 App. Div. 750, reversed.

(Argued October 27, 1925; decided November 24, 1925.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 3, 1925, affirming a judgment in favor of plaintiffs entered upon a verdict directed by the court.

*Henry de Forest Baldwin, Lucius H. Beers* and *Thaddeus G. Cowell* for appellant. The provisions of the bond that the defendant is not liable for loss by robbery of govern-

ment coupon bonds while in transit unless accompanied by guards is a condition precedent. (*First Nat. Bank v. National Surety Co.,* 228 N. Y. 469; *O'Neil v. Buffalo Fire Ins. Co.,* 3 N. Y. 122; *King v. Tioga Co. P. F. R. Association,* 35 App. Div. 58; 1 May on Insurance [4th ed.], § 157; *Phillips-Jones Co. v. Fidelity & Deposit Co. of Maryland,* 200 App. Div. 629; 235 N. Y. 524; *Hanna v. C. T. Mutual Acc. Assn.,* 204 App. Div. 258; 236 N. Y. 571; *Fraternal Mystic Circle v. Nat. Surety Co.,* 114 App. Div. 689; *Wilder v. Union S. & G. Co.,* 42 Misc. Rep. 499; *Smith v. Fidelity & Deposit Co. of Maryland,* 120 Atl. Rep. 322.) The condition applies to any claim for loss while in transit of government coupon bonds by robbery, hold-up or theft. (*Dwight v. Germania Life Ins. Co.,* 103 N. Y. 341, 352; *First Nat. Bank v. Story,* 140 N. Y. Supp. 31; 222 N. Y. 562; *Houlihan v. P. A. Ins. Co.,* 196 N. Y. 337; *First National Bank v. Nat. Surety Co.,* 228 N. Y. 469; *Rosenthal v. American Bonding Co.,* 207 N. Y. 162; *Dwight v. Germania Life Ins. Co.,* 103 N. Y. 341; *Matson v. Farm Buildings Ins. Co.,* 73 N. Y. 310; *Metzger v. Ætna Ins. Co.,* 227 N. Y. 411; *Auerbach v. Maryland Casualty Co.,* 236 N. Y. 247; *Imperial Fire Ins. Co. v. Coos County,* 151 U. S. 452.) Plaintiffs' failure to comply with the condition of the bond requiring that United States government coupon bonds in excess of $250,000 be in the custody of an employee continuously accompanied by two guards of more than twenty-one years of age bars any recovery in this action. (*Allen v. G. A. Ins. Co.,* 123 N. Y. 6; *Rice v. Fidelity & Deposit Co.,* 103 Fed. Rep. 427; *Murdock v. Chenango Co. Mut. Ins. Co.,* 2 N. Y. 210; *Ripley v. Ætna Insurance Co.,* 30 N. Y. 136; *First National Bank v. Insurance Co. of N. A.,* 50 N. Y. 45; *Mack v. Rochester German Ins. Co.,* 106 N. Y. 560; *Quinlan v. Providence-Washington Ins. Co.,* 133 N. Y. 356; *Cary v. Home Insurance Co.,* 199 App. Div. 122; 235 N. Y. 296; *Imperial Fire Insurance Co. v. Coos County,* 151 U. S. 452; *Kohlmann v. Selvage,* 34 App. Div. 380;

*Westfall* v. *Hudson River Fire Ins. Co.,* 12 N. Y. 289; *Williams* v. *Peoples' Fire Ins. Co.,* 57 N. Y. 274; *Mead* v. *Northwestern Ins. Co.,* 7 N. Y. 530; *Ripley* v. *Ætna Ins. Co.,* 30 N. Y. 136.)

*Robert M. McCormick* for respondents. The provisions of the policy regarding armed guards are expressly limited to losses covered by paragraph C, viz., losses proximately caused by robbery, and are not applicable to losses covered by paragraph A, viz., losses proximately caused by dishonesty of employees. Paragraph A is a wholly independent clause and is not affected by the exceptions contained in subdivision 3 of condition 12. (*American Ins. Co.* v. *Dunham,* 15 Wend. 1; *Schumacher* v. *G. E. Casualty & Indemnity Co.,* 197 N. Y. 58; *American Surety Co.* v. *Pauly,* 170 U. S. 133.)

CRANE, J. On and prior to the thirtieth day of November, 1920, the plaintiffs were copartners, doing business as brokers under the firm name of Kean, Taylor & Company at No. 5 Nassau street, New York city. They had in their employ a bond salesman named Austin A. Young, and a head runner by the name of Tony Di Gregario. The head runner had charge of the men and boys who delivered the securities to customers. Among these delivery boys was Irving Cohen, a lad about eighteen years of age. Igoe Brothers, a corporation, having an office at 29 Metropolitan avenue, in the borough of Brooklyn, was a customer of the plaintiffs, and through the bond salesman, Young, had purchased United States bonds of the face value of $466,000.

These bonds were to be delivered by the plaintiffs to Igoe Brothers on the 30th day of November, 1920. Young had spoken to the head runner, Di Gregario, about the matter the night before. Having this knowledge, Di Gregario, on his way home, on the evening of November twenty-ninth, stopped at a barber shop,

No. 500 East Eleventh street, the hang-out of a band of crooks, including his brother, where he revealed to them the possibilities of a hold-up of his firm's messengers as they were on the way to Brooklyn to deliver these bonds. The next day, about noon time, Young and the boy Cohen started out with over $400,000 worth of government bonds, to deliver them to Igoe Brothers at 29 Metropolitan avenue, Brooklyn. Cohen had been assigned by Di Gregario, the head runner, to accompany Young in making the delivery. Within a short distance of their destination, they were held up by highwaymen, assaulted, knocked down, the bag containing the securities wrenched from Young's hand, and the bonds stolen. As previously arranged, Di Gregario had telephoned to these robbers on the morning of the thirtieth all the details of the delivery, a full description of Young and Cohen, the time of their departure, and the place to which they were going. Although absent, he was a participant in the crime, as a principal, and was subsequently convicted in the Supreme Court of Kings county of robbery in the first degree, and sentenced to Sing Sing State Prison for a term of eight to sixteen years.

This action arises on a banker's blanket bond issued by the defendant to the plaintiffs, to insure them against certain dishonest acts of their employees and others. The plaintiffs claim that the above acts of Di Gregario are covered by the policy, and that the defendant is liable to them for the full amount, as their loss through the robbery has exceeded $100,000. The defendant admits that the bond covered the robbery, but insists that no liability attaches, as the plaintiffs failed to comply with its terms and conditions. For determination, there was presented to the courts below, and to us, merely the interpretation of the contract between the parties as expressed in the bond. Both sides, having submitted the case to the trial justice, a jury having been waived, he directed a judgment for the plaintiffs for the full amount.

The Appellate Division, by a divided court, has affirmed that judgment. We are of the opinion that the conceded facts of this occurrence do not fit into the liability clauses of the contract, for the following reasons:

The defendant insured the plaintiffs against loss, not to exceed $100,000, sustained:

" (A) Through any dishonest act of any of the Employees, wherever committed, and whether committed directly or by collusion with others;

" (C) Through robbery, hold-up or theft, by any person whomsoever, while the Property is in Transit within twenty miles of any of the offices covered hereunder and in the custody of any of the Employees, or through negligence on the part of any of the Employees having custody of the Property while in transit as aforesaid.

" The foregoing agreement is subject to the following conditions and limitations: * * *

" 12. This bond does not cover any loss resulting from any of the hazards specified in Paragraph ' C ' in respect to United States Government Coupons Bonds, or United States Government certificates of indebtedness, or cash, unless such property shall be in transit under the following conditions: * * *

" (3) Where the par value of such property is in excess of the sum of Two Hundred and Fifty Thousand Dollars ($250,000) it shall be in the custody of a partner or regular employee of the Insured, who shall be continuously accompanied by two guards of twenty-four (24) years of age or more; provided, however, that if the partner or regular employee is twenty-four (24) years of age or more the guards may be under the age of twenty-four (24) but not under twenty-one (21)."

That Di Gregario was dishonest, and that risk " A," standing alone and by itself, would cover his acts, may be conceded. The clause, however, does not stand alone and by itself. Another risk was within the contemplation of the parties; a street hold-up, whether by an employee

or anybody else.  Government bonds carried through the streets in large amounts increased the risk.  The plaintiffs and the defendant must have realized what everybody apparently knows, and which is common knowledge, that highway robberies have been of frequent occurrence in the city of New York.  If the plaintiffs were to send their employees through the streets with government securities, the danger was increased, so that by the terms of their contract with the defendant, they were obliged to reduce the danger and the risk at least to the extent therein provided for.  The delivery of government bonds in excess of $250,000 was to be made by a regular employee of the insured, continuously accompanied by two guards over twenty-one years of age.  What was the principal element the contracting parties must have had in mind by the provision of clause " C," thus conditioned and limited by section 12, subd. 3?  It was the risk and danger of carrying government bonds through the streets, the likelihood or possibility of the messenger being held up and the bonds stolen.  The defendant was unwilling to assume this risk unless three men, all over twenty-one years of age, made the delivery.  The danger and the risk were the hold-up on the highway.  It was entirely immaterial to this risk whether the hold-up was by an employee of the plaintiffs or by a stranger.  Suppose Di Gregario, instead of planning the hold-up, and sending others to commit it, had himself held up Young and Cohen at the point of a pistol, and taken the satchel containing the bonds.  Would the case be any different so far as these conditions apply, than if the hold-up men were strangers?  The risk would be lessened if three men accompanied the delivery, whether Di Gregario or the strangers made the assault, and it would be increased in like fashion, if the required guards did not accompany the messenger.  In other words, the personality of the criminal was not the important thing; the risk was

17

increased or diminished by the number or personality of the guards.

Therefore, we find clause " C " dealing with robbery while the property is in transit, as a separate and distinct subject of contract. It could hardly be more specific. The defendant insures against a loss occasioned through robbery of United States government bonds while they are in transit within twenty miles of the plaintiffs' offices. This robbery may be committed by " any person whomsoever." This includes an employee as well as a stranger. The insurer, however, requires but one condition, which is absolutely within the control of the insured. It is that government bonds over $250,000 in value shall be delivered by a regular employee of the insured, continuously accompanied by two guards over twenty-one years of age.

This condition the plaintiffs failed to fulfill. They did not perform their part of the contract, a condition precedent to liability. The bonds were carried through the street by Young, an employee, accompanied by a lad eighteen years of age. The risk was materially increased by this fact. It was a vital, an important part of the agreement. And what is more, the omission was known to Young, for he frankly states in his testimony that he knew when he left the plaintiffs' offices to make delivery of the bonds that he should have taken with him two guards of the required age.

The plaintiffs cannot expect the defendant to keep its part of the obligation when they have omitted a vital prerequisite of their own. We take this bond as we find it, placing upon the parties merely the obligations which they have voluntarily assumed, and holding them to the natural consequences of their defaults. An insurance policy or bond is no different than any other contract, and comes within the same rules of construction. The purpose and attempt of the courts is to give to the language used by the parties its usual and ordinary

meaning in the light of all the circumstances and conditions, having in mind, as did the parties, the nature of the transaction.

For the reasons here expressed, the judgments of the courts below should be reversed, and judgment entered dismissing the complaint, with costs in all courts.

HISCOCK, Ch. J., CARDOZO, POUND, MCLAUGHLIN and LEHMAN, JJ., concur; ANDREWS, J., dissents.

Judgments reversed, etc.