SOL. A. NOSONOWITZ, Plaintiff, *v.* EAGLE INDEMNITY COMPANY, Defendant.

City Court of New York, September 17, 1928.

668

*Goldstein & Goldstein* [*Jonah J. Goldstein* of counsel], for the plaintiff.

*Frank J. O'Neill* [*Barnett Cohen* of counsel], for the defendant.

RYAN, J. The defendant issued to the plaintiff a policy of insurance indemnifying plaintiff against all direct loss sustained by burglary, larceny or theft of property within the entire premises occupied by plaintiff. And in consideration of an additional premium and on the same day attached a rider or an indorsement to the policy aforementioned whereby the defendant insured plaintiff against robbery (commonly known as holdup). In taking out said insurance a number of representations were made by the insured (plaintiff), but among them only one is material here, and that is as follows: " 10. Insured has not sustained any loss by burglary or theft of any kind, nor received nor claimed indemnity for loss by burglary or theft of any kind, nor been declined burglary or theft insurance, nor has such insurance been canceled within the last five years, except as follows: no exceptions." A loss admittedly covered by the policy occurred whereby plaintiff lost property to the value of $1,865 by robbery. Plaintiff brings this action to recover the amount of said loss under the robbery policy. The defendant has set up two separate defenses: (1) That the statement made by plaintiff to the effect that he had not sustained any loss by burglary or theft of any kind nor received nor claimed indemnity for loss by burglary or theft of any kind was false. Plaintiff had claimed and received indemnity for a loss by burglary or theft with the Fidelity and Casualty Company of New York, and (2) that the burglary or theft insurance policy which had theretofore been issued in plaintiff's favor by the Fidelity and Casualty Company of New York had been canceled by that company. The action came on for trial before the court and a jury. No testimony was taken — both sides stipulating the facts and introducing in evidence various exhibits. Each side then moved for the direction of a verdict. It is conceded that prior to the issuance of the policy

involved in this case plaintiff held a " personal holdup policy " issued to him by the Fidelity and Casualty Company of New York, indemnifying him from all loss by robbery or holdup of property from his person, and it is conceded that plaintiff filed a claim under that policy, together with a statement and proof of loss, which claim was subsequently adjusted and a draft issued to him by said Fidelity and Casualty Company, which company thereupon canceled said policy previously issued to the plaintiff. The question is, therefore, presented: Was there a misrepresentation on the part of the plaintiff in obtaining the policy now under consideration from the defendant company? And did the cancellation of the policy by the Fidelity and Casualty Company breach the warranty of the plaintiff with this defendant?

The representation referred to is in the alternative and uses these words: " The insured has not sustained any loss by burglary or theft of any kind." Granting plaintiff's contention that in the policy sued on a clear and definite distinction is drawn between burglary, larceny and theft policies on the one hand, and robbery policies on the other, plaintiff stressed the point that because the term " robbery " was not mentioned in the representation in question, he was justified in saying he had not sustained any loss by burglary or theft of any kind, nor received nor claimed indemnity for loss by burglary or theft of any kind. With this narrow interpretation of the terms employed in the representation I cannot agree. Robbery is a theft committed in a particular manner, and when plaintiff stated that he had not sustained any loss by theft of any kind his representation was not only evasive, but materially untrue. Good faith and not the narrow distinctions drawn in his own mind were demanded of the plaintiff in disclosing his previous insurance experience. (*McNally* v. *Phœnix Ins. Co.*, 137 N. Y. 389.) The word " theft " has been defined in a very recent case in the Court of Appeals as meaning larceny or stealing. (*Underwood* v. *Globe Indemnity Co.*, 245 N. Y. 111.) The Standard Dictionary defines " theft " as the act of thieving, stealing or any illegal acquisition of property. And in another case the term " theft " includes any wrongful deprivation of the property of another. (*Fidelity & Casualty Co. of New York* v. *Wathen*, 205 Ky. 511; 266 S. W. 4.) Bouvier says of theft that it is a wider term than larceny and includes other forms of wrongful deprivation of property of another. In a recent Ohio case the court said: " We are constrained to give that construction to the word ' theft ' that is understood by persons in the ordinary walks of life." (*Royal Ins. Co.* v. *Jack*, 113 Ohio St. 153, 163.) The term " robbery " has also a definite meaning and the term has been defined by the

Court of Appeals as the taking or procuring by force. And in a case cited in plaintiff's brief, robbery is defined as the taking of money from the person of another against his will by the use of force or putting him in fear. The policy covers a robbery commonly known as highway robbery or holdup. The law recognizes different degrees of theft. It is right that it should do so, because the purloining of money under some circumstances is a graver crime than under others. Burglary, robbery and larceny are not at all the same in kind or in moral delinquency. (*Duluth St. R. Co.* v. *Fidelity & Deposit Co. of Maryland,* 136 Minn. 299; 161 N. W. 595.) The inquiry of the defendant was a reasonable one to ascertain plaintiff's prior insurance experience, if any; to know whether the plaintiff had previously had property stolen from him and if so in what manner, whether he had made a claim therefor, and whether a prior policy for such loss had been canceled. To all these inquiries plaintiff answered no. " A positive representation of a material fact must be full and true." (3 Joyce Ins. [2d ed.] § 1927.) " An insurance policy or bond is no different than any other contract, and comes within the same rules of construction. The purpose and attempt of the courts is to give to the language used by the parties its usual and ordinary meaning in the light of all the circumstances and conditions, having in mind, as did the parties, the nature of the transaction." (*Kean* v. *National Surety Co.,* 241 N. Y. 252, 258.)

The rule is well settled that no strained or forced construction of a contract will be resorted to for the purpose of establishing a forfeiture, but that to warrant a party in insisting that his adversary has forfeited any rights which he would be entitled to by a contract between them he must put his finger on the specific provision of the contract which requires the party against whom the forfeiture is alleged to do the thing, the failure to do which is relied upon to work a forfeiture. (*Perry* v. *Bankers' Life Ins. Co.,* 167 N. Y. 607.) Judge CARDOZO has said that the test is one of thought — what did the parties intend when they made their contract? (*Van Vechten* v. *American Eagle Fire Ins. Co.,* 239 N. Y. 303.)

After an examination of numerous authorities bearing upon the question involved, I am of the opinion that there was a misrepresentation on the part of the plaintiff, whether intentional or otherwise it is unnecessary now to determine, and that the verdict should be directed for the defendant. Ten days' stay and thirty days to make case. Submit order.